IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VICTOR RAMOS SANTIAGO, ET AL.,

    Plaintiffs,

                v.                  Civil No. 14-1087 (SEC)

WHM CARIB, LLC, ET AL.,

    Defendants.

**OPINION AND ORDER**

Before the Court is Plaintiffs' motion for leave to file a second amended complaint, Docket #35, Defendants' opposition thereto, Docket # 36, and the parties' replies, Dockets ##41 & 48. After reviewing the filings and applicable law, Plaintiffs' motion for leave to file a second amended complaint is **GRANTED** in part and **DENIED** in part.

**Factual and Procedural Background**

After Victor Ramos Santiago (Ramos) was fired from WHM Carib, LLC (Wyndham) for allegedly violating company policy, he and his whole immediate family (Plaintiffs) filed this diversity suit, alleging claims of wrongful termination under Puerto Rico Law 80, P.R. Laws Ann. tit. 29, §§ 185a-185m, and age discrimination under Puerto Rico Law 100, P.R. Laws Ann. tit. 29, § 146, against Wyndham, and several Wyndham officers in their individual capacities (Defendants). After the close of the pleadings, the exchange of initial disclosures, and some written discovery, Plaintiffs now move for leave to amend their complaint, under Fed. R. Civ. P. 15(a), to include three new defendants: Continental Insurance Company of New Jersey (Continental), Wyndham's insurance carrier; Kelli Joseph (and her conjugal

partnership), Wyndham's Senior Corporate Director of Human Resources, and Wyndham Worldwide Corporation (Wyndham Worldwide), Joseph's employer. Plaintiffs also seek to include two new counts: a breach-of-contract claim, and a so-called "contractual nullity" claim. See Docket # 35.

Defendants oppose the motion to amend on two grounds. First, they argue that allowing the amendment would unduly prejudice them by requiring them to spend "significant additional resources[.]" Docket # 36 at 6. Second, they maintain that the claims against Joseph and the breach of contract actions would be futile because they would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

**Standard of Review**

A motion for leave to amend a complaint should be "freely give[n]," "when justice so requires." Fed. R. Civ. P. 15. However, "this 'does not mean ... that a trial court must mindlessly grant every request for leave to amend.'" Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390 (1st Cir. 2013) (quoting Aponte–Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006)). Denial of leave to amend is proper when the request "is characterized by "undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part." Id. (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)).

**Applicable Law and Analysis**

The first reason given for denying the amendments – undue prejudice – lacks force. The proposed amendments cannot be deemed unduly prejudicial. To start, they were not proposed late enough so that Defendants would be required to engage in significant new preparation. This is not the same situation as in Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998), in which the court affirmed a denial of leave to amend, because "by the time of the motion for leave to amend, nearly all the case's pre-trial work was complete," id., and discovery would have had to be reopened. Id. at 53. Here, in contrast, Plaintiffs filed their motion within the case-management order's deadline to amend pleadings; it was filed in September

2014, less than eight months from the filing of the original complaint. At that point, the discovery was barely getting started, and as of November 2014 the discovery and other case-management deadlines have been stayed – precisely to avoid the waste of time and resources. The proposed amendments, furthermore, do not "substantially change" the theory on which the case has been proceeding; they merely augment the theory. In short, no undue prejudice will accrue, so that ground is insufficient to block the proposed amendments.

      Whether the amendments would be futile presents a more difficult question. "The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), of course, but another well-trodden principle dictates that "futility is a sufficient basis for denying leave to file an amended complaint." Muskat v. United States, 554 F.3d 183, 195 (1st Cir. 2009) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007). Futility, the First Circuit has said, "means that the complaint, as amended, would fail to state a claim upon which relief could be granted," Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996), which is to say, if it cannot withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Adorno v. Crowley Towing And Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

      *I.    Contract Nullity and Breach of Contract claims*

      Plaintiffs move to include two new contract claims in their amended complaint. They argue that Wyndham Worldwide's "Business Principle Book" (the Book) – the set of ethical principles and code of conduct allegedly used to justify Ramos' discharge – is null and void because it contains provisions that are illegal under Puerto Rico law. See Docket # 35-1, ¶¶ 144-155.[1] Alternatively, they seek to incorporate a breach of

---

[1] Specifically, Plaintiffs argue that the clauses stating that the Book is not a contract, that Wyndham employs at an "at will" basis, and that its provisions can be changed at any time, unilaterally and without notice; are null and void under Puerto Rico law. They also argue that since the Book lacks a valid severability clause, "the entire Book is null and void." See Docket #35, ¶¶ 144-155. However, Plaintiffs' argument is a non-starter because the Book itself states that "some of the Business Principles may vary from one country to another to ensure compliance with applicable law" and that its Principles shall govern, "[u]nless otherwise required by law." Docket # 36-3 at 4.

contract claim based on the same provisions arguing that Wyndham breached its duty of good faith before, during, and after the execution of the contract. Id. at 157-170.

This matter is easily disposed of because, even assuming that the Book is deemed to be an employee manual,[2] and thus part of the employment contract under Puerto Rico law, its terms do not create an independent cause of action. See Pardo Hernández v. Citibank, N.A., 141 F. Supp. 2d 241, 246 (D.P.R. 2001) (construing Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763 (Puerto Rico 1992)).[3] In any case, Ramos admits that he "is not saying that the [contract] breach is independently actionable." See Docket #41 at 7. Accordingly, Plaintiffs' contractual claims are futile and may not be incorporated into an amended complaint as independent causes of action.

Still, "the benefits and privileges set forth in an employee manual 'constitute rights of the employee and a dismissal in violation of these [ ] would result in an unjust dismissal.'" Pardo Hernández 141 F. Supp. 2d at 246 (citing Santiago, 129 D.P.R. at 776). Hence, Plaintiffs may challenge the validity of the Book's provisions to contest Defendants' alleged justification for dismissal, but any "remedy for breach of the employee manual rests within the confines of Law No. 80." Id.

## II.   *Individual liability under Laws 80 and 100*

Defendants argue that Plaintiffs' request to join Joseph is futile for two reasons. First, they argue that there is no individual liability under Law 80, which only allows recovery against the employer. Second, they maintain that the proposed pleading lacks

---

[2] Contrary to Plaintiffs, Defendants contend that the Book is not an employee manual but a "general set of values and ethical expectations that applies to all Wyndham employees worldwide." See Docket # 36 at 12. According to Defendants, the governing employee manual is a document titled "Wyndham Hotels & Resorts Employee Handbook" which is specifically tailored to Puerto Rico Law. Id.

[3] See also, Vargas v. Royal Bank of Canada, 604 F. Supp. 1036, 1041 (D.P.R. 1985) ("the exclusive remedy for dismissal without cause lies with Act No. 80 and not on the basis of a contractual liability arising from internal rules and regulations"); In re El San Juan Hotel Corp., 149 B.R. 263, 274 (D.P.R. 1992) ("Section 185a has been found to be the exclusive remedy for wrongful termination under Puerto Rico law"); Alvarado Morales v. Digital Equip. Corp., 669 F. Supp. 1173, 1184 (D.P.R. 1987) ("Employees in Puerto Rico who are terminated without 'good cause' are limited to the remedy provided by Puerto Rico's Discharge Indemnity Law… Nor may the plaintiffs somehow ground their claims on an alleged breach of contract").

allegations regarding any discriminatory conduct from Joseph against plaintiff Ramos. See Docket #36, at 8. The Court agrees with Defendants that Plaintiffs' claim against Joseph under Law 80 is futile. However, that is not necessarily the case as to their claim under Law 100.

This district has consistently rejected individual liability claims for wrongful termination under Law 80. See Flamand v. Am. Int'l Grp., Inc., 876 F. Supp. 356, 364-65 (D.P.R. 1994); Mandavilli v. Maldonado, 38 F. Supp. 2d 180, 205 (D.P.R. 1999); Vargas v. Fuller Brush Co. of Puerto Rico, 336 F. Supp. 2d 134, 141 (D.P.R. 2004); Rivera-Almodovar v. Instituto Socioeconómico Comunitario, Inc., 806 F. Supp. 2d 503, 509 (D.P.R. 2011). The reason is that the exclusive remedy that Law 80 provides to an employee against its employer is based on wages. While Law 80 does not include an explicit definition for "employer," "because the remedy is based on wages, and because it does not make sense that a supervisor should pay wages to an employee... supervisors [are not] 'employers' under [Law 80]." Flamand, 876 F. Supp. at 364. The same result follows regardless of whether Joseph was Ramos' supervisor or not. See Mandavilli, 38 F. Supp. at 205 ("While Plaintiffs are not alleging that the individual Defendants are supervisors, they are nevertheless attempting to hold liable the individual employees [...] involved in the [...] decisions."). Thus, Plaintiffs' proposed individual liability claim against Joseph under Law 80 is futile.

Joseph's potential liability for age discrimination under Law 100 – Puerto Rico's general anti-discrimination statute – is a different matter. Contrary to Law 80, which contains no definition of "employer," under Law 100, the term "employer" "[i]ncludes any natural or [juridical] person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or [juridical] person." P.R. Laws Ann. tit. 29, § 151(2). Relying on this, and on the definitions of "employer" in Laws 17 (sexual harassment) and 69 (gender discrimination), id. §§ 155(a) & 1322(2), the Puerto Rico Supreme Court held that "a company agent,

official, administrator or supervisor incurs personal civil liability under Laws Nos. 17, 69, and 100, in addition to the real employer, for the sexual harassment acts committed by him or her against a worker or employee of said employer." Rosario Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R. 634, 648 (P.R. June 29, 2000), 2000 WL 943550 (Kikuet I).

"Still, whether Law 100 imposes individual liability for acts other than sexual harassment appears to remain unresolved by the Supreme Court of Puerto Rico." Bonilla-Pérez v. Citibank NA, Inc., 892 F. Supp. 2d 361, 368 (D.P.R. 2012) (noting a split between different panels of the Puerto Rico Court of Appeals on whether individual liability under Law 100 extends beyond sexual harassment). The reason is that the holding in Kikuet I is somewhat blurred as it relates to general discriminatory acts outside those governed by Law 17. The opinion begins with the following inquiry,

> Does the definition of "employer" contained in labor laws that prohibit discrimination in employment, sexual harassment, and gender discrimination extend to a company president and supervisor of an alleged victim of sexual harassment when he was directly engaged in the conduct charged against him?

Kikuet I, 151 D.P.R. at 638. At first glance, it seems that the Supreme Court intended to circumscribe its holding to sexual harassment cases. However, it then specifically defined the controversy as

> whether the term "employer" includes its agents, officers, administrators and supervisors, among other persons that are part of the company, when it is alleged--as in this case--and subsequently shown that they engaged in conduct banned by the **mentioned statutes**.

Id. at 640. (Emphasis added).

Law 100 is one of the "mentioned statutes" that Kikuet I refers to, along with Laws 17 and 69. The Puerto Rico Supreme Court observed that these laws are clear and free from ambiguity and that "[t]heir definitions of 'employer' include the employer's supervisors, officials, administrators and agents." Id. at 643. Ultimately, it

held that "[the individual defendant] [was] an "employer" under Acts Nos. 17, 69, and 100, and, as such, he [was] personally liable for his own sexual harassment acts." Id. at 644. In support thereof, the court noted that Article 11 of Law 17, provides that "[a]*ny person* responsible for sexual harassment in employment, as defined by [secs. 1 to 13 of] this Act, shall incur in civil liability . . . ." Id. at 645 (quoting P.R. Laws Ann. tit. 29, §155j) (emphasis in original). It found "evident that [Article 11] is not limited to the real employer or company owner, but extends to any person liable for the conduct in question, without distinctions of any kind." Id. (emphasis added). Thus, it is evident that Law 17 provides for individual liability for sexual harassment acts. Whether the same analysis applies to Law 100 – which imposes liability to "any employer" as opposed to "any person" – is not so evident. Still, in its holding, the Puerto Rico Supreme Court specifically relied on the definition of "employer" under Laws 17, 69, and 100; all of which include any natural or juridical person, and its agents. See P.R. Laws Ann. tit. 29, §§ 115(a), 1322(2), & 151(2). Arguably, the court's reasoning may extend to all of the above-mentioned statutes.

To further complicate the matter, six months after its decision, the Puerto Rico Supreme Court issued a resolution denying reconsideration. See Rosario Toledo v. Distribuidora Kikuet, Inc., 153 D.P.R. 125 (2000) (Kikuet II).[4] This time, however, it narrowed its analysis exclusively to the language of Law 17. The resolution relied on Law 17's definition of "employer," – which is similar to Law 100's definition in that it includes any natural or juridical person and its agents – and in its distinction between the remedies available against any person from those available exclusively against the employer – the employer's potential obligation to hire, promote, or reinstate the employee. Kikuet II, 153 D.P.R. at 131. According to the Puerto Rico Supreme Court, "[h]ad the lawmakers intended to exclude individual liability, they would not have made [that] distinction." Id. As previously noted, that distinction is lacking in Law

---

[4] A certified translation of Kikuet II is attached as Exhibit # 1 of this Opinion.

100, which only provides remedies against "*[a]ny employer* who … discriminates against an employee." P.R. Laws Ann. tit. 29, § 146, (emphasis added). Despite this variance, in Kikuet II, the Puerto Rico Supreme Court did not expressly limit the holding in Kikuet I to the provisions of Law 17.

Considering that Joseph and Worldwide have yet to make an appearance, the Court will defer ruling on this unsettled issue of Puerto Rico law to a later stage (e.g. summary judgment), if necessary. Weighing heavily in favor of deferment is the fact that most courts in this district have rejected a narrow interpretation that would limit Kikuet I to sexual harassment claims. See Bonilla, 892 F. Supp. 2d at 367.[5] For purpose of this ruling, the Court assumes without deciding that Law 100 provides a remedy against individuals that commit discriminatory acts in the workplace. Still, at this juncture, the Court will not foreclose arguments either way.[6]

Assuming that the holding in Kikuet I applies to this age discrimination case is not dispositive. The crux of Defendants' argument is a challenge to the sufficiency of the allegations in the proposed amended complaint under the pleading standards set forth in Bell Atlantic Corp v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Defendants argue that the amended complaint does not contain "any facts whatsoever to indicate Ms. Joseph partook in discriminatory acts against the plaintiff," Docket # 36 at 8, and that Plaintiffs "must, at a minimum, allege that Joseph had a 'substantial link' to Ramos's termination." Docket # 48 at 3. Because "[t]here is no practical difference, in terms of review, between a denial of a motion to amend

---

[5] Citing Otero–Merced v. Preferred Health Inc., 680 F.Supp.2d 388, 392 n. 5 (D.P.R.2010) (refusing to "[c]abin the Kikuet decision to only sexual harassment claims"); Vélez Nieves v. Microsoft Caribbean, Inc., Nos. 05–1067, 05–1098, 2006 WL 1805689, at *6 –10 (D.P.R. Mar. 15, 2006); Díaz–Rivera v. El Día, Inc., No. 04–2005, 2005 WL 2333645, at *3 (D.P.R. Sept. 23, 2005)). In fact, "this very same court has mechanically applied Law 100 to individual defendants in contexts other than sexual harassment." Bonilla, 892 F. Supp. 2d at 367. (Internal citations omitted). Moreover, "given Law 100's definition of "employer," the analysis set forth in Otero–Merced, 680 F.Supp.2d at 392 n. 5 (rejecting the defendants' narrow interpretation of Kikuet), is highly persuasive, and is in line with the Supreme Court of Puerto Rico's mandate to liberally interpret labor laws; '[t]heir liberal interpretation, in favor of those whom they intend to protect, is imperative.'" Bonilla, 892 F. Supp. 2d at 367 (quoting Hernández v. Raytheon Serv. Co. P.R., No. 05–1937, 2006 WL 1737167, at *2 (D.P.R. Apr. 27, 2006)).

[6] "The Supreme Court of Puerto Rico will hopefully settle the divergence of opinion in the Puerto Rico Courts of Appeals, thereby dispelling any doubt on this point." Bonilla, 892 F. Supp. 2d at n. 4.

based on futility and the grant of a motion to dismiss for failure to state a claim," Glassman, 90 F.3d at 623, a court reviews the sufficiency of the allegations under the same standard as a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6). Adorno, 443 F.3d at 126.

This entails a two-step process. The court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements…[,][and then] take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 7, 11–13 (1st Cir. 2011) (construing Iqbal and Twombly among others)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citing Iqbal, 556 U.S. at 681).

Plaintiffs' allegations against Joseph may be summarized as follows: 1) Joseph was personally involved in the decision to fire Mr. Ramos; 2) as Senior Corporate Director of Human Resources of Wyndham Worldwide, she was consulted about the termination; and 3) she was aware of, approved, and/or ordered Mr. Ramos' termination. See Docket # 35-1, ¶¶ 23,101-103.

The Court agrees with Defendants in that the amended complaint lacks sufficient factual support to establish that Joseph had a "substantial link" with Ramos' termination. Plaintiffs' allegations are indeed conclusory. Yet, several emails on record – included in both Plaintiffs and Defendants memoranda, see Dockets ## 36-2 & 41-10 – at the very least, plausibly demonstrate such a link. Specifically, on August 9, 2013, Wyndham's Senior Human Resources Manager Johana Vargas sent an email to Joseph informing that Ramos had been suspended for

> not telling the hotel… that he was going to receive a check under his name for $3,000 from one of the hotel's clients playing a golf

>tournament in the property [and for] [r]eceiving $300 from this $3,000… without telling the hotel…

Dockets ## 36-2 & 41-10. On August 13, 2013, Vargas sent Joseph another email that reads: "[a]s per our conversation and your support, we are moving forward with the termination of Victor Ramos." Id. These emails are more than sufficient to plausibly infer that Joseph was aware of, consulted, and supported Ramos' termination. Regardless of the allegations, the emails provided by Defendants themselves foreclose any challenge to Joseph's involvement in Ramos's termination. Hence, the Court will allow Plaintiffs to file another amended complaint to incorporate the facts contained in the above-referenced emails, because justice so requires. See Fed. R. Civ. P. 15(a)(2).

Defendants have one last arrow in their quiver. They argue that the amended pleading lacks specific acts of discriminatory conduct necessary to meet the plausibility standard. See Docket # 36 at 8. However, "'some latitude may be appropriate' in applying the plausibility standard... [in] cases in which a material part of the information needed is likely to be within the defendants' control." Garcia-Catalan v. United States, 734 F.3d 100, 104 (1st Cir. 2013). This is particularly relevant in this case where Joseph's involvement in Ramos's termination was revealed after written discovery responses. See Docket # 35, ¶¶ 2-4. Furthermore, it would be unreasonable to require Plaintiffs to plead specific acts of discriminatory conduct since, "'[s]moking gun' proof of discrimination is rarely available, especially at the pleading stage"… the plausibility threshold simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 49 (1st Cir. 2012) (citations and quotations omitted).

At this point, Plaintiffs' claim against Joseph may seem far-fetched. Still, although determining whether a complaint states a plausible claim "'requires the reviewing court to draw on its judicial experience and common sense,' the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that

actual proof of those facts is improbable.'" Ocasio-Hernandez, 640 F.3d at 12 (internal citations omitted). That is, courts may not "attempt to forecast a plaintiff's likelihood of success on the merits [since] 'a well-pleaded complaint may proceed even if... a recovery is very remote and unlikely.'" Id. at 13 quoting Twombly, 550 U.S. at 556.

Plaintiffs' allegations against Joseph are, to say the least, weak. However, a new amended complaint that incorporates facts regarding the emails between Vargas and Joseph could state a plausible claim against the latter. Assuming Plaintiffs file an amended complaint, they will be allowed a reasonable time to conduct discovery regarding Joseph's participation in Ramos' alleged discriminatory discharge. That being said, the Court echoes its previous remarks regarding the claims against defendant Willenberg, which Plaintiffs wisely dismissed voluntarily:

> the Court is taking this matter – the propriety (or not) of the claims against defendant [Joseph] – very seriously, reminding them that Rule 11 requires that their "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…" Fed. R. Civ. P. 11(b)(3); see also P.R. Laws Ann. tit. 32, App. III, Rule 44.1(d). A violation of these postulates may entail harsh sanctions. See, e.g., MB Auto Care Mgmt., Inc. v. Plaza Carolina Mall, L.P., 755 F. Supp. 2d 382, 384 (D.P.R. 2010).

Docket # 54 at 2.

For the reasons stated above, Plaintiffs' age discrimination claims against Joseph and Wyndham Worldwide under Law 100 are not clearly futile and the Court will allow their joinder. The same is not true, however, as to the claims against Joseph's conjugal partnership. Defendants correctly argue that this issue was also decided in Kikuet I where the Puerto Rico Supreme Court held that "the conjugal partnership is not liable for the damage caused by the [discriminatory] acts committed by one of the spouses." Kikuet, 151 D.P.R. at 648. The Court notes that Plaintiffs did not even respond to Defendants' challenge in this regard. Thus, Plaintiffs may not join Joseph's conjugal partnership in the amended complaint.

**Conclusion**

For the reasons stated, Plaintiffs' motion for leave to amend is **GRANTED** in part and **DENIED** in part. Plaintiffs may file a second amended complaint to join Continental, Joseph and Wyndham Worldwide. However, they may not join Joseph's conjugal partnership nor may Plaintiffs include the proposed contract claims as separate causes of action.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of September, 2015.

> S/ Salvador E. Casellas
> SALVADOR E. CASELLAS
> U.S. Senior District Judge