IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **VICTOR RAMOS SANTIAGO**, minors J.M.C.R., J.M.C.R., G.M.R., and Y.L.D.R., represented by their mother, Maryam Ramos Meléndez, and Maryam Ramos Meléndez, in her individual capacity,<br><br>Plaintiffs<br><br>v.<br><br>**WHM Carib, LLC**, Jeff Willenberg and his conjugal partnership, Danny Williams and his conjugal partnership<br><br>Defendants | CIVIL No. 3:13-cv-01087 (SEC)<br><br>Plaintiffs demand trial by jury<br><br>**Re:** Age Discrimination (Puerto Rico Law 100); Unjust Dismissal (Puerto Rico Law 80); Torts and Lost Financial Support |

## STATEMENT UNDER PENALTY OF PERJURY

I, Jeff Willenberg, of legal age and resident of Dorado, Puerto Rico, under penalty of perjury, pursuant to 28 U.S.C. ' 1746, state and affirm:

1) My name and personal circumstances are as above stated.

2) Since March of 2014, I have been the Director of Golf at Dorado Beach Resort and Club. From June 2012 until March 2014 I was the Director of Golf at Wyndham Resort at Río Mar ("Wyndham"). My functions as the Director of Golf at Wyndham included overseeing all golf and country club operations, as well as overseeing all employees within the Country Club Department.

3) Victor Ramos ("Ramos") began working at Wyndham Resort at Río Mar on August 22, 1987. I have known Ramos through the golf community in Puerto Rico for approximately ten (10) years prior to working together at Wyndham.

4) During the time I was Director of Golf at Wyndham, the Country Club Department had approximately 40 employees. I oversaw all employees within the country club. Specifically, Herminio Figueroa, Golf Operations Manager, was Ramos' direct supervisor, and Figueroa, in turn, reported directly to me. I, in turn, reported to Danny Williams, General Manager of Wyndham Resort at Río Mar.

5) Ramos' job duties included, but were not limited to overseeing all aspects of tournament operations and assisting the Head Golf Professional with the supervision of the overall

1

golf operation, sending out press releases, scoring, and any tournament related task, overseeing site setup of golf tournament and golf courses, set up and prepare all golf outings

6) In addition to his employment with Wyndham, Ramos also worked for the PGA Island Chapter of Puerto Rico as its Tournament Coordinator. To my knowledge, Ramos helped contact facilities to schedule tournaments, help coordinate the tournaments, work with suppliers, and work with Island Chapter Professionals to play for the various events, among other duties of which I am not aware. Ramos' work with the PGA was separate from his employment at Wyndham.

7) Ramos was permitted to use his contacts at the PGA in order to attempt to bring new business to Wyndham, but he was expected to do so in his capacity as a Wyndham employee.

8) Wyndham's golf course is often host to various golf tournaments. Some of these golf tournaments are coordinated by the PGA. An event run by the PGA means that the event is completely organized and sponsored by the PGA, and it is only associated with a golf course for the use of said facilities. Other golf tournaments at Wyndham are held by private companies, sponsors, organizations, and like, which are not PGA-related. At these particular tournaments, however, PGA professionals are often invited to play in the tournament in order to attract more players and increase the level of play. Merely because a PGA golf professional is playing in a tournament, however, does not mean that the PGA is sponsoring the tournament or that it is run by PGA employees. Ramos helped organize both PGA-sponsored tournaments, and non-PGA-sponsored tournaments.

9) The College of Engineers and Land Surveyors of Puerto Rico holds a golf tournament for its members, among other invitees. This annual golf tournament is an example of a tournament not sponsored by the PGA, but rather, funded by the College of Engineers itself. Ramos helped bring this tournament to Wyndham though his connections in the golf community. Ramos both brought the tournament to Wyndham and coordinated the tournament at Wyndham **as a Wyndham employee.** Any work Ramos put in to bring the College of Engineers and the time he spent coordinating the actual tournament was done as a Wyndham employee because **he was being paid by Wyndham to do the same. He was not being paid by the PGA to sponsor the College of Engineers golf tournament.** The PGA did not sponsor the College of Engineers event, though some PGA golf professionals played in the College of Engineers' tournament.

10) To my knowledge, prior to the College of Engineers tournament, Ramos and representatives of the College of Engineers had agreed that the tournament was to have prize money for the players. This prize money was to be distributed among the various winners of the tournament. Unbeknownst to me at the time, Ramos arranged for the prize money to be given to him in a check payable to "Victor Ramos" as Tournament Coordinator for the PGA, despite the fact that Ramos coordinated the tournament as a Wyndham employee. Ramos received no authorization from Wyndham to receive a Wyndham client's money in a check made payable to him personally.

11) Following the tournament, Ramos cashed the check in order to deliver the prize money to the professionals. Unbeknownst to me, Wyndham, or anyone at the College of Engineers,

2

Ramos kept $300.00 of the prize money as a "personal fee" for coordinating the tournament. Again, he was not authorized to do so.

12) I became aware of the fact that Ramos had received a $3,000 in his name the same day the tournament concluded, August 8, 2013, and called my direct supervisor, Danny Williams, to inform him of what had happened. Danny and I decided to finish the tournament activities scheduled for that day, as the event was almost concluded, before investigating the situation with Ramos.

13) On August 9, 2013, Ramos was called into the offices for a meeting with Joanna Vargas of Human Resources and I, where we informed him that he was to be suspended while an investigation took place into the incident surrounding the College of Engineers check and the personal fee.

14) On August 12, 2013, Johanna Vargas sent me an email requesting me to provide a recap of the conversation I had on August 9, 2013, with Mr. Eddy Reyes, one of the tournament board members for the College of Engineers' golf tournament, regarding the $3,000.00 check given to Víctor Ramos. In said email, Ms. Vargas also requested that I provide my recommendation about this case.

15) On August 13, 2013, at 7:03 a.m., I replied to Ms. Vargas' email and informed her that my recommendation was to give Víctor Ramos a written warning and uphold the suspension. Among other things, and based on what Víctor Ramos had told me, I stated that he had paid a fee to himself in previous tournaments.

16) Later that day, I met with Ms. Vargas and Héctor Aponte at Ms. Vargas' office to discuss the matter. During said meeting Ms. Vargas explained to me, from a Human Resources standpoint and pursuant to Company policies, that Víctor Ramos' actions of taking $300.00 from the client's money for himself, without anyone's authorization or knowledge, warranted his termination from employment. After her explanation, I agreed with her analysis and aligned myself with her recommendation to terminate Ramos from his employment. 

17) The investigation of the aforementioned events took place from August 9 through 14, 2013. Danny Williams, Hector Aponte, Joanna Vargas, and I took part in the same. Kelli Joseph of Human Resources at Wyndham's corporate level was consulted from a Human Resources standpoint.

18) After completing our investigation, the decision was made to terminate Ramos from his employment at Wyndham. Wyndham considered the fact that Ramos took $300.00 of a client's money as a personal fee without consent of the client or of Wyndham an issue of dishonesty. The decision to terminate Ramos in no way was driven by his age, or any other factor other than the act itself.

19) I was given the responsibility of terminating Ramos. Ramos was terminated on August 15, 2013.

20) At no point was Ramos' age ever discussed, either during my time working with him at Wyndham, during the investigation leading up to his termination, or at his termination. The decision to terminate Ramos was based solely on the incident surrounding the College of Engineers' check, which Wyndham believed reflected dishonesty on Ramos' part.

21) Following his termination, Ramos continued to help the PGA Island Chapter coordinate tournaments throughout the island. I saw him briefly at a tournament he worked following his termination. Ramos' age was never discussed at this meeting either.

22) Following Ramos' termination, his position as Tournament Coordinator was eliminated. Following the elimination of the Tournament Coordinator position, the various job functions of said position were absorbed by other members of the Wyndham Golf Department. Specifically, Herminio Figueroa, Golf Operations Manager and previously Ramos' direct supervisor, was given added responsibilities including but not limited to: overseeing the country club, club house operations, operation of the golf operations for the bag-room, locker room, tennis facilities, driving range, and pro shop associates, upkeep of the facilities, oversee all groups and tournament operations and tee sheet management. Figueroa, also over age 40, absorbed the tournament operations responsibilities previously held by Ramos. Jeannette Gonzalez remained in charge of the Golf Pro Shop, and she also absorbed new responsibilities, including but not limited to sales of club memberships. Jeannette Gonzalez's new functions were not related to Ramos' termination.

23) In March of 2014, I made the decision to accept an offer at another hotel, Dorado Beach Resort and Club. This decision was purely professional, and I left employment at Wyndham voluntarily and on good terms.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

WHEREFORE, I subscribe the present statement in ___Dorado___, Puerto Rico, on this _31_ day of May, 2016.

JEFFREY WILLENBERG