## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| VICTOR RAMOS-SANTIAGO, ET AL., <br><br> Plaintiffs, <br><br><br> v. <br><br> WHM CARIB, LLC, ET AL., <br><br> Defendants. | Civil No. 14-1087 (SEC) |

### OPINION AND ORDER

Victor Ramos and his immediate family (Plaintiffs) bring this diversity suit seeking compensatory damages against Ramos' previous employer, WHM Carib, LLC (Wyndham), some of Wyndham's employees in their individual capacities,[1] and its insurance carrier. Ramos claims wrongful termination under Puerto Rico Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a–185m (Law 80), and age discrimination under the Commonwealth's general anti-discrimination statute, Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 et seq. (Law 100). His family members seek damages under Puerto Rico's general tort statutes, P.R. Laws Ann. tit. 31, §§ 5141 and 5142, for damages suffered as a result of Wyndham's alleged discrimination against Ramos.

Before the Court are the parties' cross-motions for summary judgment. Plaintiffs' motion is **denied** and Defendant's motion is **granted in part and denied in part.**

---

[1] These are Wyndham's General Manager, Danny Williams and Wyndham's Human Resources Regional Director, Kelli Joseph. Initially they also pressed claims against Wyndham's Director of Golf, Jeff Willenberg, but they later dismissed their claims against him without prejudice. Wyndham Worldwide Corporation (Wyndham's parent corporation), which at the time Plaintiffs thought it was Joseph's employer was also a defendant. Wyndham moved to dismiss the claims against Wyndham Worldwide on grounds that it was not Joseph's employer. Plaintiffs explicitly acquiesced to Wyndham's request, see Docket # 136, p. 12, and thus their claims against Wyndham Worldwide are dismissed with prejudice.

**Civil No. 14-1087 (SEC)** **Page 2**

## I.      Factual and Procedural Background

Victor Ramos began working at the Río Mar Resort (Río Mar or the Hotel) in 1987. At the time, the Hotel was administered by a subsidiary or affiliate of Westin Hotels & Resorts. In 2003, Ramos started a side job as tournament coordinator for the Professional Golfers' Association (PGA), and a year later he also became golf tournament coordinator for Río Mar. In 2007, the Hotel administration changed and Wyndham became Ramos' employer.

Working as tournament coordinator for two different employers posed no problem for Ramos until the summer of 2013. Then, he coordinated a PGA-affiliated tournament for the College of Engineers and Land Surveyors of Puerto Rico (CELS) at Río Mar. After twenty-six years at Río Mar, an incident involving Ramos' dual role as tournament coordinator for Wyndham and the PGA got him fired. The details follow.

In August 2013, CELS held its annual convention at Río Mar. Ramos was instrumental in bringing the CELS convention to the Hotel through his connections in the golf community. See Docket # 125-31, ¶ 9.  The convention included a professional-amateur golf tournament, which Ramos coordinated. His work included inviting "PGA Pros" to play at the tournament. To incentivize their participation, CELS agreed to provide a $3,000 cash prize, to be distributed among the PGA Pros playing the tournament. The event planner working for CELS asked Ramos for an invoice specifically stating that the $3,000 corresponded to the cash prize for the PGA Pros. Although Ramos coordinated the tournament during his working hours with Wyndham, he requested CELS to make the check payable to himself, as tournament coordinator for the PGA.

The day before the tournament, a representative from CELS delivered the $3,000 check to Wyndham, which ended up in the hands of Wyndham' comptroller, Hector Aponte. Suspicious that the check was made payable to Ramos (as opposed to the Hotel), he made a photocopy of it and began an inquiry into the situation. He turned to Jeff Willenberg, Wyndham's Director of Golf and one of Ramos' supervisors, who

**Civil No. 14-1087 (SEC)**                                                   **Page 3**

explained that the money was a cash prize to be distributed among the PGA Pros playing at the tournament. Aponte then requested a breakdown of the funds, to which Willenberg replied that it would have to wait until they knew exactly how many PGA Pros would show up for the tournament the next day. See Docket # 123-11.

On tournament day, a Wyndham employee delivered the check to Ramos. He deposited the check in his personal account, immediately withdrew $2,700 in cash—which he distributed among the PGA players after the tournament was over—and kept the remaining $300.

The next day, Willenberg, Aponte, and Wyndham's Human Resources Manager, Johana Vargas, met with Ramos to discuss the situation. Ramos explained that the prior year he had organized the CELS tournament as part of his side job with the PGA. In 2012, CELS held its convention and golf tournament at Palmas del Mar, and the cash prize was channeled through the Palmas del Mar Athletic Club. Ramos said that this resulted in a delay of at least several days until the PGA Pros received the funds. According to Ramos, this time he requested CELS to issue the check to his name only to speed up the process. Regarding the remaining $300, Ramos explained that in 2012, the CELS' tournament chairman—who was no longer with that organization for the 2013 tournament—paid him a $300 fee for his services. See Docket # 123-7.

Meanwhile, Willenberg, following Vargas' instructions, investigated CELS's knowledge of the situation. A CELS representative told him that it was agreed that Ramos would distribute the cash prize among the PGA Pros but that CELS was unaware that Ramos would keep $300 from the pot to himself.

That evening, Wyndham suspended Ramos pending further investigation. He received an Associate Performance Action Form stating that he was suspended for not notifying Wyndham that he was going to receive a $3,000 check from one of its clients and not saying that he was keeping $300 from these funds. See Docket #123-9.

Vargas then asked Willenberg for his recommendation as to the appropriate sanction for Ramos. Willenberg's impression was that Ramos truly believed that he was doing the right thing. Stressing that Ramos had cooperated with the investigation and provided the information requested by Wyndham, Willenberg recommended giving Ramos a written warning and maintaining the suspension. See Docket # 138-1, p. 1. Vargas disagreed, advocating instead for Ramos' termination.

Throughout the investigation, Vargas consulted the proposed disciplinary action with Kelli Joseph, Wyndham's Regional Human Resources Director.[2] After reviewing the information provided by Vargas, Joseph agreed with her and recommended Ramos' termination.[3]

Ramos was sixty years old, had been recently rated as a "Key Contributor" in employment evaluations, and had no disciplinary record during his twenty-six years at Río Mar. Despite this, and following Vargas' and Joseph's recommendation, Wyndham's General Manager, Danny Williams, made the final decision to terminate Ramos.

Five months later, Plaintiffs filed this action. After an extensive and contested discovery, the parties filed the pending cross-motions for summary judgment.

## II.    Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita

---

[2] Joseph is employed by non-party Wyndham Hotel Group, LLC, presumably an affiliate of Wyndham. She provides support to local hotel administrators within her region, including Wyndham's Río Mar.

[3] The parties dispute whether Joseph "recommended" or only "supported" Ramos' termination. Their dispute arises in the context of Ramos' age discrimination claim against Joseph in her individual capacity. The Court fails to see how this trivial distinction makes Joseph's role in Ramos' termination more or less probative of discrimination. In any event, because the Court ultimately finds that there is insufficient evidence to support a claim for age discrimination against any of the Defendants in this case, the distinction is immaterial.

Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and yet must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Where, as here, the parties filed cross-motions for summary judgment, courts must "consider each motion separately, drawing all inferences in favor of each non-moving party in turn." AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (citing D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011)).

### III.    Applicable Law and Analysis

As a threshold matter, the Court takes judicial notice that the recently enacted Puerto Rico Labor Transformation and Flexibilization Act, Law No. 4 of February 26, 2017 (Labor Reform Act), amended several labor statutes, including provisions of Law 80 and Law 100. These changes could be relevant here. For instance, the Labor Reform Act carved out the clause in Law 80 providing that all terminations are presumed without cause, see Labor Reform Act, Article 4.3 (amending Article 1 of Law 80), and Law 100's presumption that all unjust dismissals are discriminatory. See id., Article 6.3 (amending Article 3 of Law 100). Whether these amendments have retroactive effect is unclear.

The general rule is that "[l]aws shall not have a retroactive effect unless they expressly so decree." P.R. Laws Ann. tit. 31, § 3. But for procedural rules the opposite is true. Procedural rules generally have retroactive effect and are applied to "actions pending at the moment of [their] effectiveness," Ortiz v. Fernos López, 4P.R. Offic. Trans. 1193, 1194 (1976), unless the statute explicitly states the contrary. Clases A, B y C v. PRTC, 133 D.P.R. 666, 680 (2011). And some statements by the Puerto Rico Supreme Court suggest that provisions regarding presumptions and burdens of proof are procedural. See e.g. Ramírez Ferrer v. Conagra Foods PR, 175 D.P.R. 799, 815 (2009) (describing Law 100's presumption as a procedural scheme); W. India Mach. v. Srio. de Hacienda, 97 D.P.R. 34, 44, n.13 (1969) (characterizing rules concerning the burden of

proof as procedural). This seems to be the case in Louisiana, which also has a civil law tradition similar to that of Puerto Rico. See Sudwischer v. Estate of Hoffpauir, 705 So. 2d 724, 729 (La. 1997) ("This Court has held that a statute changing a burden of proof is procedural and is to be applied retroactively").

Article 1.2 of the Labor Reform Act states that employees hired before the Act's effective date will continue to enjoy the same rights and benefits that they had previously, as expressly provided in the Articles of the Law. And the Act does contain some provisions explicitly stating that they are inapplicable to employees that were hired before its effectiveness. See e.g. Article 4.3 (the new cap on severance pay is not applicable to employees hired before the Act's enactment), Article 5 (employees hired before the Act's enactment are entitled to the same vacation benefits they had under the previous law), and Article 8.1 (the enlarged probationary periods for new employees are not applicable to those hired before the Act's effectiveness). The question remains whether the provisions that remain silent on the issue, such as the elimination of the presumptions in Law 80 and Law 100, among others, may apply to actions pending before the enactment of the Labor Reform Act. In its preamble, the Act states that it harmonizes local law with federal law to provide a rich source of judicial precedents, which could avoid new controversies or resolve the existing ones rapidly and accurately. See Labor Reform Act, preamble.[4] The preamble's reference to resolving existing controversies suggests that at least some provisions may be applicable to pending litigation.

This new legislation creates a fork in the road of this case. Going forward, the Court could either predict how the Puerto Rico Supreme Court would decide on the retroactivity *vel non* of the relevant provisions of the Labor Reform Act, or resolve the

---

[4] The Puerto Rico Supreme Court has called "for a flexible approach in interpreting the retroactivity provision [Article 3 of the Civil Code] and guided trial courts to look to the legislative intent of a new law to determine whether it should have retroactive application." Liquilux Gas Corp. v. Martin Gas Sales, Inc., 779 F. Supp. 665, 667 (D.P.R. 1991) (construing Warner Lambert co. v. Tribunal Superior, 1 P.R. Offic. Trans 527, (539-540)).

pending motions on the pre-enactment law. The latter is preferable for two reasons. First, the Court does not have the parties' input since the parties' cross-motions preceded the Act's enactment. Second, the pre-enactment law benefits Plaintiffs, who are for all practical purposes, the non-movants at this stage. The summary dismissal of Ramos' age discrimination claim is therefore grounded on a more difficult standard; dismissal under a laxer standard, of course, would also be warranted. As to the wrongful termination claim, Defendants will have the opportunity raise the issue before trial, if necessary.

### a.  <u>Wrongful Discharge under Law 80</u>

The Court begins with Ramos' motion for summary judgment. First, he argues that the two rulebooks on which Wyndham based its decision are unenforceable because they contain illegal clauses. Specifically, he points to some clauses stating that the rulebooks are not contracts, that they are subject to changes without notice, and that Wyndham employees are "at will" employees. This argument lacks force.

The clauses stating that the provisions in the rulebooks do not create contractual obligations may run afoul of Puerto Rico law. <u>See</u> <u>Santiago v. Kodak Caribbean, Ltd.</u>, 129 D.P.R. 763, 775-776 (1992) (suggesting that rules and regulations contained in the employee manual are enforceable as part of the contractual relationship between the parties). And the same is true for those allowing Wyndham to change the rules without proper notice. <u>See</u> <u>Rivera Aguila v. K-Mart de P.R.</u>, 123 D.P.R. 599, 613-614 (1989), 23 P.R. Offic. Trans. 524 ("When establishing that violations of the job standards are just cause for a discharge, the employer must prove," among other things, "that he furnished a written copy of these rules to the employee"). But the Court struggles to understand how these clauses are relevant to the case at hand. The clauses saying that the rulebooks do not create contractual obligations may well be unenforceable. Yet Ramos has not shown how the existence of these clauses has caused him any prejudice. And he does not allege that Wyndham changed any provision to his detriment without providing fair notice

Ramos also posits that one of the rulebooks is unenforceable because it states that Wyndham has an "employment at will policy" which, according to Ramos, is unconstitutional under Puerto Rico law. He relies on an isolated statement by the Puerto Rico Supreme Court in Rivera v. The Fuller Brush Co., 180 D.P.R. 894 (2011), that reads: "the employment-at-will doctrine, which gave the employer the liberty to hire and fire an employee with or without cause and without compensation, is foreign to our constitutional and statutory scheme." Id. at 904. Setting aside the relevancy *vel non* of this argument, it is a non-starter. Context reveals that the court was referring to the traditional "employment at will doctrine," under which the employer may discharge an employee without cause and without compensation. See id. (noting that many courts in the United States "have rejected the traditional employment-at-will doctrine") (internal quotations and citations omitted). Indeed, the court later indicates that Puerto Rico law "does not absolutely prohibit employee discharge; it rather punishes wrongful discharge" id. at 904. A month later, in C.O.P.R. v. S.P.U., 181 D.P.R. 299, (2011), the Puerto Rico Supreme Court characterized Law 80 as a modification of the employment at will doctrine, under which employees can be discharged with or without cause, subject to the payment of the severance pay if the termination is without cause. See id. at 357 n.18, citing Otero Burgos v. Inter American University, 558 F. 3d 1, 7–8 (1st Cir. 2009); and Hoyos v. Telecorp Communications, Inc., 488 F. 3d 1, 6 (1st Cir. 2007); Barreto v. ITT World Directories, Inc., 62 F. Supp. 2d 387, 394 (D.P.R. 1999). Thus, employment at will is not prohibited under Puerto Rico law; rather, terminations without cause are merely discouraged through the imposition of a mandatory severance pay.

Because Ramos' remaining arguments are diametrically opposed to those in Wyndham's motion for summary judgment, the Court addresses them jointly. Before moving forward, a primer on the relevant provisions of Law 80 is warranted.

The pre-amendment version of Law 80 contains a rebuttable presumption that every termination is unjust. See Álvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). To trigger this presumption, a plaintiff need only

prove that he was discharged and allege lack of justification for it. See id. The employer must then prove the existence just cause by a preponderance of the evidence. Id. The statute provides a non-exhaustive list of circumstances that may constitute just cause for termination, including, among others, that the employee "indulges in a pattern of improper or disorderly conduct" or engages in repeated violations of the employer's reasonable rules and regulations. P.R. Laws Ann. tit. 29 § 185b.

Termination as a penalty for a single offense, as in this case, is allowed only in exceptional circumstances, and must not "reflect arbitrariness or whim of the employer." See Secretario del Trabajo v. I.T.T., 8 P.R. Offic. Trans. 564, 568-569 (1979). The analysis is very fact-intensive and involves multiple variables, including the nature of the offense and the effect it may have in the "proper and normal operation of the enterprise," the employers' rules and regulations, id., and the employee's years of service. Id. at 578 (J. Negrón-García, dissenting).

In practice, these factors often tug strongly in opposite directions. For example, while an employer may justly discharge an employee with seven months of employment for the single offense of lying about his criminal history in the employment application, see Autoridad de Edificios Públicos v. U. I. E., 130 D.P.R. 983 (1992), P.R. Offic. Trans., it cannot do the same to an employee having a clean disciplinary record during a seventeen-year tenure for lying to get a leave of absence. See Secretario del Trabajo, 8 P.R. Offic. Trans. 564. In the latter case, the Puerto Supreme Court found that the employer's rule allowing dismissal for a single incident of lying was unreasonable. See id. at 572-573.

The severity of the offenses also modifies the analysis significantly. "Major offenses," need not be in the employer's regulations to allow for lawful termination because "a person of normal intelligence has to know" that, for example, stealing "[c]onstitute[s] a major or serious offense [that] he must not ever commit." Miranda Ayala v. Hospital San Pablo, 170 D.P.R. 734, 741 (2007) (affirming dismissal of an

employee who had stolen two cases of spoiled beer and denied it until he was confronted with a video showing the theft).

Here, the situation falls somewhere in the middle of this multivariate spectrum. It is undisputed that Ramos took $300 without authorization from either CELS or Wyndham.[5] And Ramos' excuse for doing so—that in the previous year a CELS's representative who was no longer with the organization paid him $300 for coordinating the tournament at another location and during his own time—is, to say the least, weak. A reasonable jury could easily reject Ramos' excuse and conclude that he was trying to embezzle the cash and that he purposely requested CELS to issue the check in his name so that no one would find out about it. If the jury so finds, this would constitute a "serious offense" that Ramos knew he must never commit, Miranda Ayala, 170 D.P.R. at 740, and therefore, the Court need not entertain his argument that the rules and regulations on which Wyndham based its decision are too vague and do not prohibit his conduct.[6]

On the flipside, contrary to what happened in Miranda Ayala, Ramos did not lie when confronted but instead admitted everything. This, combined with Willenberg's statement that Ramos truly believed that he was not doing anything wrong and his initial recommendation against termination, could lead a reasonable jury to find that Ramos only made an innocent mistake. And adding Ramos' twenty-six years of service with a perfect disciplinary record, his instrumental role in getting CELS to hold its convention at Wyndham, and that the incident had no negative consequences for Wyndham's relationship with CELS, the jury could also conclude that Ramos' offense warranted a less severe disciplinary action.

---

[5] Ramos attempts to circumscribe the reasons behind his termination only to his failure to disclose the transaction to Wyndham. Plaintiffs could certainly make this argument to the jury but there is sufficient evidence on record that suggests otherwise. For example, the fact that Wyndham took the time to verify whether CELS had knowledge that Ramos would keep $300 from the prize money implies that it was a consideration in its decision-making process.

[6] The Court notes that the Employee Handbook, tailored specifically to Wyndham employees in Puerto Rico, specifies that discharge may be appropriate when an employee commits theft or embezzlement. See Docket # 123-25, pp.14-15.

Although the material facts of this case are for the most part undisputed, whether Ramos' actions fall within Law 80's exception permitting discharge for a single offense is a mixed question of law and fact better left to the jury. See Hana Fin., Inc. v. Hana Bank, 135 S. Ct. 907, 911 (2015) ("the application-of-legal-standard-to-fact sort of question..., commonly called a 'mixed question of law and fact,' has typically been resolved by juries.") (quoting United States v. Gaudin, 515 U.S. 506, 512 (1995)). The parties' cross motions for summary judgment on Ramos' claim for unjust termination are thus denied.

### b.  Age Discrimination under Law 100

Ramos brings his age discrimination claim under Law 100, the Commonwealth's general anti-discrimination statute. Law 100 affords similar protection against age-based discrimination as that provided by the Age Discrimination in Employment Act. 29 U.S.C. § 623. Before the Labor Reform Act's amendments, however, a plaintiff's burden under Law 100 was lighter. See Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 453, n.7 (1st Cir. 2009).[7] To establish a *prima facie* case for discriminatory discharge under the pre-amendment version of Law 100, a plaintiff need only prove that he was discharged without just cause and within the protected class at the time—here, age. See Ramos Pérez v. Univision, 178 D.P.R. 200, 222 (2010).  If he succeeds, the burden of persuasion shifts to the employer to demonstrate that it had a "reasonable explanation for the discharge" or otherwise prove that it was not motivated by discrimination. Ibanez v. Molinos de P.R., Inc., 14 P.R. Offic. Trans. 58 (1983); see also Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001). At this stage, the employer's evidence is measured only against the evidence that is essential to the

---

[7] Under the Labor Reform Act, claims for age discrimination under local law should track the ADEA's burden shifting standard. Not only did the Act eliminate the presumption of discrimination, see Labor Reform Act, Article 6.3, but it also requires, to the extent possible, consistent interpretation between local and federal antidiscrimination and retaliation laws and regulations. See Labor Reform Act, Article 6.2.

employee's prima facie case, see Belk Arce v. Martínez, 146 D.P.R. 215, 231 (1998),[8] and the employer need only show that discrimination was not the "determinative factor" for the discharge. See id. at 232; Ibanez, 14 P.R. Offic. Trans. at 76;" Báez García v. Cooper Labs., Inc., 20 P.R. Offic. Trans. 153, 154 (1987); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 305 n.10 (1994); Rosario v. Toyota, 166 D.P.R. 1, 8 n.5 (2005). If the employer succeeds, the burden shifts back to the employee who must show that the employer's decision was motivated by age discrimination, this time without the benefit of the presumption. See López Fantauzzi v. 100% Natural, 181 D.P.R. 92, 123 (2011).

It is undisputed that Ramos was in the protected class at the time he was discharged. His *prima facie* case for age discrimination thus turns on whether he can show that Wyndham lacked "just cause" to terminate him. On this matter, Law 80's provisions on just cause "serve as a point of reference in construing Law 100." Báez García, 20 P.R. Offic. Trans. 153, 154 (1987). Because, as discussed above, this is ultimately a question for the jury, the Court assumes—only for purpose of summary judgment—that Ramos will succeed in his wrongful discharge claim and thus trigger the presumption of age discrimination.

Wyndham then must show by a preponderance of the evidence that Ramos' discharge was not motivated by age discrimination. Álvarez-Fonseca, 152 F.3d at 28. Wyndham has easily met this burden simply by pointing to the undisputed facts that triggered Ramos' termination.

Wyndham began the investigation only after one its employees received a $3,000 check by one its current clients (CELS), that was made payable to Ramos. This "makes

---

[8] Earlier Puerto Rico Supreme Court cases suggest that when an employee triggers Law 100's presumption, the burden of persuasion shifts to the employer throughout the whole trial. See Ibanez 14 P.R. Offic. Trans.at 72-73 (1983) (stating that "if the defendant effectively proves the inexistence of discrimination, the controversy would end and any further evidence would be unnecessary"); see also Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994). However, it is clear now that this is not the case. Subsequent opinions clearly indicate that the employee always bears the ultimate burden of proving discriminatory animus by the employer. See López Fantauzzi v. 100% Natural, 181 D.P.R. 92, 123 (2011); Cardona Jimenez v. Bancomerico de Puerto Rico, 174 F.3d 36, 43 (1st Cir. 1999).

it unlikely that the inquiry was fabricated as a ruse" to terminate Ramos on account of his age. Baralt, 251 F.3d at18. Wyndham quickly learned that Ramos was never the intended recipient of these funds; the money was for the PGA Pros playing at the golf tournament. Further investigation revealed that it was Ramos who requested that the check be issued to his name and that he kept $300 of these funds to himself without authorization from either CELS or Wyndham. These uncontested facts clearly demonstrate that "the existence of discrimination was less probable than its nonexistence," id. at 16, and certainly show that discrimination was not "determinative" in Wyndham's decision to discharge Ramos. See Ibanez, 14 P.R. Offic. Trans. at 76. In short, Wyndham effectively rebutted Law 100's presumption of discrimination.

To survive summary judgment, then, Ramos must present sufficient evidence upon which a rational factfinder could conclude that Wyndham's professed reason for termination was a mere pretext and that age discrimination was, at the very least, a motivating factor. See Álvarez-Fonseca, 152 F.3d at 28. This may be proven by "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action," Gómez–González v. Rural Opportunities, Inc., 626 F.3d 654, 662–663 (1st Cir. 2010), evidence of differential treatment to older employees, age related comments by decision makers, and replacement by younger employees. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991).

Ramos makes a thinly veiled attempt to establish differential treatment. He posits that Willenberg and his immediate supervisor, Herminio Figueroa, were both considerably younger and treated more leniently. The problem is that Ramos has not shown that they were similarly situated "in all material respects," as required "to be probative of discriminatory animus." Thermo King de Puerto Rico, Inc., 585 F.3d at 451.

Ramos makes too much of the fact that Willenberg received $150 for participating as a PGA Pro in the CELS's tournament. To be sure, when the issue of the

check under Ramos' name first surfaced, Aponte (Wyndham's comptroller) suggested to Willenberg not to take a participation fee. The conversation between Willenberg and Aponte, however, was inconclusive. After the incident with Ramos, Vargas (from Human Resources) did instruct Willenberg not to play in future tournaments held at Río Mar. But Willenberg's action, even if prohibited, was not similar to that of Ramos. To start, Willenberg played in the tournament during his day off. Thus, he was not using working hours for personal business. More importantly and contrary to Ramos' situation, no reasonable person could even conceive the possibility that Willenberg's conduct—the above-the-table receipt of a participation fee—could constitute embezzlement or misappropriation of funds.

As to Figueroa, Ramos points out that he has not been fired despite having several disciplinary actions in his record. But most of these occurred long before Wyndham began operating the Hotel in 2007 and are thus irrelevant since they did not involve the same employer and standard of conduct. See e.g. Walker v. City of Holyoke, 523 F. Supp. 2d 86, 104 (D. Mass. 2007) ("a plaintiff still needs to show that a comparator employee was 'treated more favorably by the same decisionmaker,' even though they were both 'subject to the same standards of conduct' and engaged in similar, but not necessarily identical, conduct") (quoting Coleman v. Donahoe, 667 F.3d 835, 846–48, 850 (7th Cir. 2012) (emphasis added)). Figueroa had two recent reprimands in his disciplinary file; one for not using the proper procedure when disciplining an employee and another for not informing internal candidates for a position that the vacancy had been filled. Clearly, these are not even in the same ballpark.

Ramos mentions that his duties were absorbed by younger employees as indicative of Wyndham's discriminatory animus. But Ramos did not substantiate this underdeveloped argument with any supporting authority and the Court fails to grasp the logic behind his reasoning—specifically, how does the redistribution of duties in this case supports the existence of pretext or discriminatory animus?

Finally, he argues that Wyndham ignored many mitigating factors in its decision to terminate him. He points out that Wyndham knew that he had a side job with the PGA. But this is beside the point since he was not fired for this reason. He also says that Wyndham ignored his clean disciplinary record, Willenberg's initial recommendation not to fire him, and that his actions had no negative consequences for Wyndham. Even assuming that Ramos mustered sufficient evidence to show that Wyndham in fact ignored these circumstances, this may shore up his claim for unjust dismissal, but it is not on its own probative of age discrimination. See Baralt, 251 F.3d at 19. And "the record contains no direct evidence of age discrimination, not even the sorts of stray remarks that are suggestive but often found insufficient to prove discrimination in the absence of more meaningful evidence." Id. at 17. To the contrary, Ramos admitted that he had a good relationship with everyone at Wyndham and could not recall anyone ever saying something discriminatory to him.

On this record, Ramos' age discrimination claim is doomed. Thus, even assuming that Law 100 provides for individual liability, Ramos' discrimination claims against Wyndham's officers in their personal capacities fall flat as well. And because the tort claims raised by Ramos's family members are derivative and contingent on his age discrimination claims, See Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12-13 (2007), they cannot survive either.

## IV. Conclusion

Plaintiffs' motion for partial summary judgment in **denied**. Wyndham's motion for summary judgment is **granted** as to Ramos discrimination action under Law 100 and as to the tort action by his family members. Ramos action for unjust termination survives, and so, Wyndham's motion on this front is **denied**.

**Civil No. 14-1087 (SEC)**                                           **Page 16**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of March, 2017.

S/ Salvador E. Casellas
SALVADOR E. CASELLAS
U.S. Senior District Judge
